## WISE v. UNIVERSAL CORPORATION et al.
### Civ. A. No. 307.

United States District Court
D. Delaware.
Oct. 13, 1950.
As Amended Nov. 17, 1950.

.James R. Morford (of Morford, Bennethum, Marvel & Cooch) and William Prickett, of Wilmington, Del., for plaintiff.

Hugh M. Morris and Edwin D. Steel, Jr. (of Morris, Steel, Nichols & Arsht), of Wilmington, Del., for defendants.

LEAHY, Chief Judge.

This derivative suit was brought for the benefit of Universal Corporation [1] by plaintiff as a holder of certain voting trust certificates representing the common stock of Corporation. Plaintiff seeks cancellation of particular VTCS of Corporation and certain options to purchase other VTCS as against certain of the individual defendants, Standard Capital Company, J. Cheever Cowdin and Charles J. Prutzman. The action involves two distinct transactions. The first revolves about the "Laemmle Option". In March 1936, defendants Capital—a corporate instrument of Cowdin—and Rogers owned an option to buy 90% of the common, and 100% of the second preferred stock of Pictures plus 200 shares of Big U Film Exchange common stock for $5,450,000.00. This option is styled the Laemmle option as Rogers and Capital acquired it from one Carl Laemmle. On March 13, 1936, defendants Rogers, Cowdin and Rank organized Corporation and des-

---

1. This litigation involves one facet of the motion picture industry.

Universal Corporation will be called "Corporation"; Universal Pictures Company, Inc., "Pictures"; Standard Capital Corporation, "Capital"; voting trust certificates, "VTCS".

ignated its officers and directors. After the organization of Corporation, Rogers and Capital assigned the Laemmle option to it in return for, among other things, the issuance to Rogers and Capital (Cowdin) of options giving the right to buy a large block of Corporation's VTCS at $10 per share. At the time of this assignment, Pictures was on the verge of insolvency, was borrowing to pay current operating expenses and had operating deficits. Plaintiff first acquired her VTCS of Corporation on November 19, 1936, while the warrants were issued to Capital on April 1, 1936.

Plaintiff attacks the validity of the warrants issued to Capital under the March 1936 contract on the ground they were issued without sufficient consideration. The individual defendants in the matter at bar make alternative arguments: (1) there was sufficient consideration for the option and the complaint itself on its face even alleges their issuance as part of the consideration for the assignment by Capital of its interest in the Laemmle option; (2) plaintiff is estopped to attack the validity of the warrants because she did not acquire her VTCS until after the warrants had been issued. Though plaintiff alleges she was a stockholder at the times of the acts of which she complains, she now admits she did not acquire her VTCS in fact until after the warrants had issued to Capital. She claims to meet this apparent infirmity by contending that Rule 23(b) of the Rules of Federal Procedure, 28 U.S. C.A., does not bar her action because the issuance of the warrants in the specific case before us was part of a continuing conspiracy and, in any event, the warrants had not been exercised by defendant holders at the time she acquired her VTCS.

The second transaction which is sought to be condemned revolves about several employment contracts which also have to do with the issuance of warrants. The particular warrants issued to defendant Prutzman under his contract of March 4, 1941, fall into two categories: (1) Warrants for 6,000 VTCS which were issued to Prutzman in exchange for warrants which were issuable to him under his former 1939 contract with Corporation;[2] and (2) Warrants which were issued to Prutzman during his employment by Pictures under its contract of March 4, 1941. Under this contract with Corporation, Prutzman was entitled to receive warrants for 3,000 VTCS during each year of his employment by Pictures under its contract of March 4, 1941. By another contract with Corporation of the same date defendant Cowdin was similarly entitled to receive warrants; in his case 5,000 VTCS during each year of his employment by Pictures under its contract of March 4, 1941. It may facilitate clearness to restate these cinema transactions another way. On March 4, 1941, Pictures by contract employed Cowdin and Prutzman for substantial salaries and a share of profits. On the same day, Corporation executed separate contracts with these same defendants whereby a guarantee was made for Pictures' performance of its employment contracts with Prutzman and Cowdin and Corporation agreed to issue options to these same defendants under which they could buy substantial amounts of Corporation's VTCS at $10 per share. Plaintiff asserts Corporation had no legal or corporate power to contract to issue warrants to either Prutzman or Cowdin in connection with their employment by Pictures. Defendants strongly assume the negative of this proposition.

Defendants Capital, Cowdin and Prutzman[3] moved for summary judgment[4] and

---

2. See n. 3.

3. The warrants for 6,000 VTCS, while exercisable over a longer period of time than Prutzman's 1939 warrants, called for a higher price. Plaintiff has not attempted to attack the validity of the 1939 warrants. Consequently, the 1941 warrants issued on their surrender are not subject to attack and no further mention will be made of these warrants. Defend-

ants' motion for summary judgment in this respect will be granted.

4. The complaint names other defendants, both corporate and individual, and alleges other causes of action on behalf of Corporation; but the parties have agreed to bring forth for decision only the matters embraced within the issues raised by the motion for summary judgment, i. e., the option, warrants and employment con-

on the basis of the pleadings, exhibits, affidavits and other writings before me the parties have supported and attacked the motion.

### First: the Laemmle Option

1. I conclude the issuance of warrants to Capital and Rogers in exchange for the Laemmle option was supported by sufficient legal consideration. Plaintiff argues at length the warrants should be held invalid because the stock which Corporation was entitled to buy under the Laemmle option was not worth $5,450,000.00 based upon either an earning or asset valuation. Plaintiff urges the option had no value to Corporation and could not, therefore, constitute sufficient consideration for the issuance of the warrants. It is here, I think, plaintiff misconceives the nature of the transaction. Corporation acquired the option not because it thought Pictures at that time was worth $5,450,000.00 but because it thought its stock would be worth that—and more, most likely—in the future. This type transaction is not uncommon in our business world. Purchasers frequently pay substantial amounts for what they denominate as "calls" on stocks. Some call it business opportunities. Yet, this is just what Corporation did here. That its original opinion was supported or vindicated by subsequent events is important only because it indicates that at the time of the purchase Corporation was not acting capriciously or in utter derogation of its legal or corporate rights or to the prejudice of its security holders. Defendants here further demonstrate the fallacy of plaintiff's position by showing that her very argument that value of option is to be determined by criteria existing at the time of purchase of stock applies with equal force to the value of the warrants at the date of issuance. If the warrants are to be valued as of that date it is clear that they had no immediate value. The point is neither acquisition was based on current values. Corporation acquired the option and defendants accepted the warrants primarily because of the belief that if Pictures was properly managed it could be built into a profitable enterprise to the benefit of the interested and contracting parties.

▆▆ Weighing the true nature of the transaction, it is manifest the issuance of the warrants was supported by sufficient legal consideration. Acquisition of option was the consideration for issuance of the warrants. The relative values of the option and warrants (the relative values of one "legal consideration" over the other) is not even a subject for judicial inquiry. It has been hornbook law for years that the adequacy of the consideration—except obviously where both considerations under review consist of money—is irrelevant on the question of sufficiency.[5] Affiliated Enterprises v. Waller, 1 Terry, Del., 28, 5 A. 2d 257; 1 Williston Contracts § 115; Anson on Contracts (Patterson Ed.) § 126.[6] In the case at bar the question is simply whether the bargain made was such to support the issuance of the warrants in exchange for acquisition of the option. Unquestionably under all the tests such a bargain supports consideration on both sides.

Since plaintiff has failed in her attack on the validity of the issuance of the warrants growing out of the Laemmle option transaction, it is unnecessary to consider whether she had the legal right to raise such issue in face of Rule 23(b) and the fact that she first acquired her VTCS of

tracts. Accordingly, judgment will be granted in favor of the defendants who have moved for summary judgment on these issues and the complaint with its residue of allegations of wrongdoing will not be dismissed but will be left undisturbed until the court is called upon to make some determination of these further questions.

5. The affairs of Delaware corporations are involved and no party contests the applicability of the Delaware law to test the legality of the option, warrants and employment transactions.

6. Plaintiff's reliance on Woodson v. McAllister, 5 Cir., 119 F.2d 924, is not accepted because there certain stock was ordered cancelled simply because applicable statutory and constitutional provisions prerequisite to support issuance of the company's stock were not met.

Corporation as late as November 19, 1936. Defendants' motion for summary judgment with respect to this particular matter is granted.

### Second: the Employment Contracts

2. The remaining phase of inquiry deals with the warrants issued by Corporation in connection with the summary judgment defendants' employment by Pictures. This constitutes the more ·difficult portion of the case. Plaintiff avers the execution of the employment contracts by Prutzman and Cowdin with Pictures did not ·constitute a valid consideration for Corporation's obligation to issue warrants to these individuals. The record before me shows that both Prutzman and Cowdin state categorically they would have been unwilling to enter into the agreement with Pictures unless Corporation had agreed to issue warrants to them. This is not a convenient or supporting afterthought for the contract itself (between Corporation and Cowdin, for example) states the contract is being entered into "as an inducement" for ·Cowdin to enter into his employment contract with Pictures. It is also the fact Corporation owned all the second preferred and 92% of the common stock of Pictures at the time. Plaintiff, however, suggests ·by her brief that it is "improbable" the warrant contracts were the inducement for Prutzman and Cowdin to enter into the Pictures contracts and that I should not accept this fact "where the tests of cross-examination and discovery have not yet been available to plaintiff." This particular point of plaintiff's case will be discussed more fully later; but suffice it to say here, at this time, defendants filed their affidavits asserting the facts of the transaction as they say they occurred on May 10, 1948, while plaintiff's answering affidavits were not filed until February 16, 1950, and, during this long interval plaintiff ·made no attempt whatsoever to take the depositions of Prutzman, Cowdin, or in fact anyone else, in order to test or challenge the facts as set forth in the affidavits of these defendants. I have decided to grant defendants' motion for summary judgment on the issues raised under this part of the case and will now turn to consider the specific reasons sustaining the motion.

■ That there was consideration supporting the employment contracts was impliedly decided in Truncale v. Blumberg, D.C., 88 F.Supp. 677, 679. There the Court in the Southern District of New York was concerned with employment and warrant contracts between Pictures, Corporation,[7] and two other employees, identical in terms with the contracts under review here. The case arose as a derivative action under the Securities and Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b), to recover profits alleged to have ·been realized by the employees as a result of sale of warrants within six months prior to the issuance to them of additional warrants under their 1941 contracts with Corporation. Plaintiff in that case argued the employees were liable for the full amount of the consideration ·received for the warrants because the ·cost of the warrants in their hands was zero. The Court rejected this argument and in so rejecting Judge Rifkind said: " * * * True enough these defendants paid no dollars for the warrants they received; nevertheless, they did not receive them for nothing. They surrendered their previous employment; they bound themselves contractually to work for a corporation whose prospects at the time were far from promising; they surrendered their freedom of action. There is no ready means of converting these imponderables into dollars and cents." Athough the case *sub judice* differs in minor contract details, the principle stated by Judge Rifkind is equally applicable here.

■ Plaintiff argues that this type of consideration—inducement to enter into employment contracts—can not in any event justify the issuance of a security by a Delaware corporation. To support this view plaintiff cites Bowen v. Imperial Theatres, 13 Del.Ch. 120, 115 A. 918; and the views expressed in B. & C. Electrical Construction Co. v. Owen, 176 App.Div. 399, 163 N.Y.S. 31, affirmed 227 N.Y. 569, 126 N.E. 927; Webster v. Webster Refin-

---

7. Same corporate parties as in the case at bar.

ing Co., 36 Okl. 168, 128 P. 261; Rogers v. Gladiator Gold Mine & Milling Co., 21 S.D. 412, 113 N.W. 86. At the outset it is only necessary to point out that these cases are not in point because they all involve an agreement to render future services, and properly hold that such an agreement does not constitute consideration for the issuance of stock under statutory or constitutional provisions similar to § 3 of Article IX of the Constitution of Delaware.[8] The cited cases all turn on the question whether a corporation will receive adequate consideration for its stock when it is issued; it has nothing to do with the question *sub judicee,* viz., whether Corporation's agreement to issue the warrants is supported by legal consideration.

Plaintiff likewise argues that support for the cancellation of the warrants may be found in Rosenthal v. Burry Biscuit Corp., Del.Ch., 60 A.2d 106, or Holthusen v. Edward G. Budd Mfg. Co., D.C.E.D.Pa., 52 F.Supp. 125. But, in the first case, for example, the Delaware Court impliedly held that had the complaint shown the alleged valuable option was granted in return for an employee coming with or remaining with the corporation, it would be sufficient consideration for the granting of the option. The same can be said of the Holthusen case.[9] It is apparent these cases do not help plaintiff for the missing link in these cases, viz., was the grant of the right an inducement for remaining or coming into the corporate employment, is present here by an uncontradicted record.

Plaintiff insists, however, the facts here are reminiscent of Eshleman v. Keenan, 21 Del.Ch. 259, 187 A. 25, affirmed 23 Del.Ch. 234, 2 A.2d 904. There, the officers of a corporation were held liable for having received "double compensation" in that they were officers of two affiliated companies. Consolidated owned a majority of Sanitary stock and through a voting trust

agreement the individual defendants were able to control both corporations. While Sanitary was paying salaries to defendants as its officers, it was also paying a management fee to Consolidated, which in turn paid out the management fee as salaries to defendants as its officers. Liability was imposed because (1) the defendants as officers of Consolidated rendered no service to Sanitary which they did not owe Sanitary as its officers, and (2) because defendants caused the payments to be made to themselves while they were in control of both companies. The bases of liability as found by the Delaware courts are absent here because (1) the warrant contracts were the means by which the services of important executives were obtained for Corporation's subsidiaries and (2) because there is no evidence here which suggests the defendants were dealing with themselves. In fact, the evidence is directly to the contrary. Full disclosure as to the employment contracts, their purpose and reach, was made to the owners of both corporations involved. At a meeting of holders of VTCS of Corporation, especially called for the purpose, disinterested holders of 86% of VTCS voted in favor of the contracts, whereas holders of only 1% of VTCS voted against them. It cannot be made more clear here that there is not the slightest implication of fraud or self dealing in the securing of the employment contracts.

Finally, plaintiff urges, with perhaps the greatest vehemence, the doctrine of Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 169 F.2d 580, 581, to defeat the motion for summary judgment. That case, read judiciously, does not apply here because it simply held that affidavits may be considered for the purpose of "ascertaining whether an issue of fact is presented, but they cannot be used as a basis for deciding the fact issue." The point here is that the affidavits do not, directly or im-

---

8. This section provides: "No corporation shall issue stock, except for money paid, labor done or personal property, or real estate or leases thereof actually acquired by such corporation."
    See § 14 of the General Corporation Law for the issuance of stock for cash,

labor done, or real or personal property, Rev.Code of Delaware of 1935, § 2046, p. 465.

9. Cf. also, Judge Rodney's excellent opinion on option features in Wyles v. Campbell, D.C.Del., 77 F.Supp. 343.

pliedly, raise any fact issue. In the case *sub judice* there is simply a complaint allegation that the warrants were issued without sufficient consideration. Clearly, this by itself does not raise a fact issue in the light of the rest of the record. The fact issue would only be raised by some attack on the categorical statement of Prutzman and Cowdin that the issuance of the warrants was one of the inducements to enter into the contract with Pictures, especially since the documentary evidence on its face supports these defendants' categorical statements. Defendants stated categorically that the issuing of the warrants was one of the inducements for their working for Pictures and plaintiff has not sought to question their state of mind either by examining them on depositions or filing counter-affidavits which even in the slightest raise any fact issue as to the sufficiency of the consideration. The affidavits of Prutzman and Cowdin were filed on May 10, 1948, and plaintiff's answering affidavits were not filed until February 16, 1950.

Doubt might have been cast upon the categorical statements had plaintiff taken Prutzman and Cowdin's depositions and sought to show the statements made in the affidavits were not wholly correct.[10] But, plaintiff, notwithstanding a twenty month interval between her affidavit and the affidavits of defendants, failed to take such depositions from anyone. Though in her brief plaintiff complains that she had no opportunity to examine Prutzman and Cowdin relative to their state of mind, she obviously did have such right under Rule 26 of the Rules of Federal Procedure and in view of her representation by astute counsel, I assume there was no basis in fact to believe that defendants' statements could be weakened. Moreover, there are many other ways in which a fact issue underlying the legal conclusion of sufficiency of consideration could have been engendered. Plaintiff might have shown, for example,

that defendants made statements to third parties that they were perfectly willing to work for Pictures at the remuneration which they received from Pictures but, seeing a chance to get extra compensation, took it. The record before me is obviously insufficient to raise a genuine issue under the doctrine of the Hart case as to a material fact underlying the legal conclusion as to the sufficiency of consideration [11] under all the three issues raised by the motion for summary judgment.

For the reasons embraced in the foregoing memorandum, I have concluded the issues raised by the motion for summary judgment should be resolved in favor of the moving defendants. Accordingly, an order may be submitted so providing.

---

10. Uncontroverted affidavits completely disclosing facts may show the absence of any issue of fact. See, Barron and Holtzoff, 3 Federal Practice and Procedure 85; Geller v. Transamerica Corp., D.C.Del., 53 F.Supp. 625, affirmed 3 Cir., 151 F.2d 534; Seward v. Nissen, D.C.Del., 2 F.R. D. 545; Allen v. RCA, D.C.Del., 47 F. Supp. 244.

11. See, too, Fox v. Johnson & Wimsatt, 75 U.S.App.D.C. 211, 121 F.2d 729, 736.